UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FRANKLIN INOJOSA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 20 C 1114 |
| | ) | |
| BOARD OF TRUSTEES OF THE CITY COLLEGES OF CHICAGO, COMMUNITY COLLEGE DISTRICT 508, a municipal corporation, | ) ) ) ) ) | Judge Charles P. Kocoras |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Defendant's Board of Trustees of the City Colleges of Chicago, Community College District 508's ("CCC") Motion to Dismiss Franklin Inojosa's ("Inojosa") Complaint. For the following reasons, the Court grants-in-part and denies-in-part CCC's Motion.

## STATEMENT

For purposes of this motion, the Court accepts as true the following facts from the complaint. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013). All reasonable inferences are drawn in Inojosa's favor. *League of Women Voters of Chicago v. City of Chicago*, 757 F.3d 722, 724 (7th Cir. 2014).

Inojosa is a full-time professor of World Languages and English Language Learning at Harold Washington College ("HWC"), one of the seven colleges in the

1

CCC system. At HWC, Inojosa's primary discipline is Spanish. Inojosa has worked as a CCC professor since 2001 and has held the rank of full professor at HWC since 2009. Inojosa is (1) 64 and the oldest member of his department; (2) one of a few Hispanic full professors at HWC; (3) one of three faculty members born outside the United States; (4) the only member of Venezuelan origin; and (5) the only male among the three highest seniority holders in the department.

The complaint principally alleges that Inojosa is subject to discrimination at HWC in the way his courses are assigned, arranged, and facilitated. HWC course selection for professors occurs in part under contract and is based on seniority and an alternate "round robin" process. Under this process, professors first fulfill their course obligations inside their department and only then teach courses outside their department when there are no remaining intra-departmental courses.

In 2009, Inojosa taught courses outside of his department and accordingly did not receive courses based on either the seniority or the "round robin" process. Inojosa's course schedule was more onerous as a result in part because his courses were scheduled at worse days and times. These difficulties continued through 2018 when Inojosa requested the opportunity to teach courses within his department. Thereafter, HWC did not honor his seniority and he received even less favorable courses. Inojosa had certain low-enrollment courses cancelled at the last minute which forced him to conduct additional preparation. However, other non-Hispanic and non-Venezuelan faculty were still allowed to teach low-enrollment courses and did not similarly suffer a heightened

2

preparatory burden as a result. Inojosa has also not been allowed to select available computer classrooms for online courses as other faculty members have.

The complaint also alleges that Inojosa was not given a slate of classes after a higher seniority faculty member went on sabbatical in the fall of 2019. The classes were cancelled instead of being given to Inojosa. Inojosa complained about discrimination to HWC through established avenues for redress and HWC has continued to place limitations on his ability to teach. Inojosa's complaint attaches an Equal Employment Opportunity Commission ("EEOC") right-to-sue letter dated November 21, 2019, following his November 15, 2019 submission of an EEOC charge.[1]

Against this factual backdrop, Inojosa claims: (1) national origin discrimination prohibited by Title VII, 42 U.S.C. § 2000e-2 (Count I); (2) race/color discrimination prohibited by Title VII, (Count II); (3) age discrimination prohibited by the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1) (Count III); (4) discrimination prohibited by Title VI of the Civil Rights Act, 42 U.S.C. § 2000d et seq (Count IV); (5) sex discrimination prohibited by Title VII (Count V); and (6) retaliation prohibited by Title VII (Count VI).

CCC moved to dismiss under Federal Rule of Civil Procedure 12 and makes three principle arguments. First, that Inojosa's complaint should be dismissed for lack of subject-matter jurisdiction because the Court does not have jurisdiction over the

---

[1] Inojosa's EEOC right-to-sue letter was attached to the complaint and is, therefore, considered part of the complaint. *N. Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452–53 (7th Cir. 1998).

3

interpretation of a collective bargaining agreement ("CBA"). Second, that Counts V and VI, alleging sex discrimination and retaliation, respectively, fail to properly state a claim. And third, that Inojosa is not entitled to punitive or exemplary damages because CCC is a municipal corporation. We address each argument in turn.

**1. Subject Matter Jurisdiction**

CCC first argues that Inojosa's complaint "inherently involves" the interpretation of a CBA and that we lack subject-matter jurisdiction over Inojosa's federal employment discrimination claims as a result. We disagree.

In general, the Court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "[W]hen federal law creates a private right of action and furnishes the substantive rules of decision, the claim arises under federal law, and district courts possess federal-question jurisdiction under § 1331." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 378–79 (2012). States do not have the power "to enlarge or contract federal jurisdiction." *Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016) (internal quotation omitted). Nor is there anything "novel about recognizing that substantive rights in the labor relations context can exist without interpreting collective-bargaining agreements." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 411 (1988).

CCC has not persuaded us that a *state* statute which precludes courts from exercising jurisdiction over *state* common-law claims somehow divests this Court of jurisdiction over claims arising under *federal* law. *See Chicago Teachers Union Local*

*1 v. Bd. of Educ. of City of Chicago*, 2018 WL 1561724, at *3 n.1 (N.D. Ill. 2018) (appropriately characterizing the narrow issue as "whether a state statute precludes courts from exercising jurisdiction over a state common-law claim"). Inojosa's complaint does not directly allege an "unfair labor practice" under Illinois law and is instead "outside the CBA."[2] *Ferkel v. Bd. of Educ. of City of Chicago*, 45 F. Supp. 3d 824, 838 (N.D. Ill. 2014). Indeed, we see little indication that the federal law allegations are somehow reliant on Inojosa's "contractual rights." *See Pryner v. Tractor Supply Co.*, 927 F. Supp. 1140, 1146 (S.D. Ind. 1996), *aff'd*, 109 F.3d 354 (7th Cir. 1997).

The instant dispute does not involve interpreting contractual language to resolve Inojosa's claims. "If that were an accurate description of [Inojosa's] claims, we would agree" with CCC. *Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 872-73 (7th Cir. 2011). Instead, the rights Inojosa asserts arise under federal employment discrimination laws which are "independent of" any CBA. *Id.* at 873. "The mere mention of or reference to" a contract in Inojosa's complaint does not automatically render it non-justiciable. *Id.* This is especially true because the "principal focus" of Inojosa's complaint is the "subjective reason[]" underlying CCC's actions which does not "require the [C]ourt to interpret" a CBA. *Id.*

---

[2] The Court notes that there is no citation to or attachment of any CBA to the complaint or CCC's motion. Even if course selection rights do "derive[] from" a CBA, the thrust of the complaint concerns CCC's discriminatory actions as a matter of federal employment discrimination law—not state common law.

5

CCC's citation to *Cessna v. City of Danville*, among other Illinois cases, does not prevent us from exercising jurisdiction. 296 Ill. App. 3d 156 (1998). Because Inojosa's claim depends on a "factual inquiry" into the existence of discrimination, rather than a dispute over the meaning of the CBA itself, we exercise jurisdiction. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 833 (7th Cir. 2014). Indeed, under Illinois law, only where an employee's claim arises "*entirely* out of a collective bargaining agreement" does the employee lack standing "without first exhausting any remedies provided for in the agreement." *Gelb v. Air Con Refrigeration & Heating*, Inc., 356 Ill. App. 3d 686, 695 (2005) (emphasis added). "[T]he mere existence of *a* dispute between an employee and an employer is insufficient to make the disputed matter subject to" the CBA. *Id.* (emphasis added). Thus, as here, where Inojosa's right arises "from another statute," the CBA does not govern. *Semmens v. Bd. of Educ. of Pontiac Cmty. Consol. Sch. Dist. No. 429, Livingston Cty.,* 190 Ill. App. 3d 174, 179 (1989).

Accordingly, we exercise subject-matter jurisdiction over Inojosa's claims.[3]

---

[3] CCC's argument on reply—notably in tandem with a 12(b)(1) not a 12(b)(6) argument—that Inojosa has not pled an adverse employment action does not preclude subject-matter jurisdiction. Because CCC makes this argument for the first time in its reply brief, it is waived. *See Niedermaier v. Warren Rosen & Co.*, 2012 WL 1142472, at *2 (N.D. Ill. 2012) (noting the "familiar rule that arguments raised for the first time in a reply brief are waived"). In addition, CCC notes that it "is not insisting that the evidentiary value of these actions be evaluated at this early stage[.]" We agree that a motion to dismiss is not the proper vehicle for the disposition of Inojosa's claims.

**2. Motion to Dismiss Counts V And VI For Failure To State A Claim**

CCC moves to dismiss Inojosa's sex discrimination claim and retaliation claim under Federal Rule of Civil Procedure 12(b)(6). The Court addresses each claim in turn.

**a. Sex Discrimination Claim Under Title VII**

CCC argues that Inojosa has failed to state a claim for sex discrimination under Title VII because Inojosa has failed to allege an "additional factor" or something "fishy" as *Gore v. Indiana Univ.*, 416 F.3d 590 (7th Cir. 2005) requires at the summary judgment stage. We disagree.

Notably, we recently rejected CCC's exact contention in *Phillips v. Baxter*, 2020 WL 2197842, at *6 (N.D. Ill. 2020) (Kocoras, J.). There, we denied a motion to dismiss because the *Gore* analysis concerns proof at the summary judgment stage, not on a motion to dismiss. We noted that the Seventh Circuit has held that "the pleading standards in [sex discrimination] cases are different from the evidentiary burden a plaintiff must subsequently meet when using the method of indirect proof under *McDonnell Douglas*." *Luevano v. Wal-Mart Stores*, Inc., 722 F.3d 1014, 1028 (7th Cir. 2013). Accordingly, we allowed Baxter's claim to proceed.

We see no reason to deviate from *Baxter* here. Generally, employment discrimination claims must adhere to a minimal pleading standard. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008); *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 781 (7th Cir. 2007). Inojosa has met that standard: he has pled that

7

he is within a protected category based on his sex and that different terms and conditions of employment were imposed on him by CCC because of his sex. Specifically, Inojosa claims that CCC gave him less desirable courses than other faculty; cancelled Inojosa's courses at the last minute which increased his preparatory burden; and declined to allow Inojosa to select available computer classrooms needed for teaching hybrid-blended courses.

Taken together, these allegations are enough to put CCC on notice of the claim and the grounds upon which it rests. Accordingly, we deny CCC's motion to dismiss Inojosa's sex discrimination claim.

### b. Retaliation

CCC also argues that Inojosa has failed to state a claim for retaliation under Title VII because Inojosa's complaint has not adequately alleged "but-for" causation or a discrete retaliatory act sufficient to establish an inference of discrimination. On both fronts, we disagree.

"Pleading a retaliation claim under Title VII requires the plaintiff to allege that she engaged in statutorily protected activity and was subjected to an adverse employment action as a result. The protected activity must be specifically identified." *Carlson*, 758 F.3d 819, 828 (7th Cir. 2014) (quotations omitted).

Inojosa has done just that: his complaint attaches an Equal Employment Opportunity Commission right-to-sue letter following his submission of an EEOC charge; he alleges that he complained about discrimination using "established avenues"

for redress; and he alleges that he suffered discrimination, including limitations on his ability to select courses and classroom facilities, as a result.

Both of CCC's specific arguments in support of dismissal do not persuade us otherwise. CCC's first contention that Inojosa must establish but-for causation as raised by *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 339 (2013), among other cases, is as we observed in *Baxter*, a question of proof, not pleading. *See Baxter*, 2020 WL 2197842, at *6. And second, that discrimination against Inojosa may have been "ongoing" does not itself fail to state a claim under Rule 12(b)(6); if anything, we *must* view his complaint through that lens. *Carlson*, 758 F.3d at 829. Indeed, the Seventh Circuit cautioned in *Carlson* that an event-by-event "parsing" in the context of a retaliation claim "los[es] sight of the bigger picture" which is "plausible and survive[s] Rule 12(b)(6)." *Id.*; *see also Conner v. Bd. of Trustees for Univ. of Illinois*, 2019 WL 5179625, at *8 (N.D. Ill. 2019) (denying a motion to dismiss where there was ongoing retaliation).

Accordingly, we deny CCC's motion to dismiss Inojosa's Title VII retaliation claim.

### 3. Punitive and Exemplary Damages

CCC moves to strike Inojosa's request for punitive or exemplary damages because such damages are not recoverable against a municipal corporation like CCC. Inojosa agrees that punitive damages should be stricken from all counts relying arising under Title VI and VII (Counts I, II, IV, V and VI). Accordingly, the Court strikes

Inojosa's request for punitive damages in Counts I, II, IV, V and VI. *See Shaikh v. Watson*, 2011 WL 589638, at *2 (N.D. Ill. 2011) (granting motion to dismiss punitive damages claim in favor of CCC because punitive damages are "barred under the Local Governmental and Governmental Employees Tort Immunity Act").

Inojosa argues, and CCC does not refute, that Inojosa's claim arising under the ADEA allows the recovery of "liquidated damages" against a municipality like CCC *Potence v. Hazleton Area Sch. Dist.*, 357 F.3d 366, 373 (3d Cir. 2004) (concluding that the "language of the ADEA itself makes it clear that Congress intended to subject municipalities" "to the liquidated damages provision of the ADEA") (citing *Orzel v. City of Wauwatosa Fire Dep't*, 697 F.2d 743, 759 (7th Cir.1983)). Accordingly, Inojosa may maintain his claim for liquidated damages under the ADEA (Count III).

## CONCLUSION

For the reasons stated above, the Court grants-in-part and denies-in-part CCC's motion to dismiss. Status is set for 10/13/2020 at 10:20 a.m. It is so ordered.

Dated: 9/15/2020

_____
Charles P. Kocoras
United States District Judge